on behalf of Appellant Access. Your Honor, do I need to start this timer? Start itself. If you want to reserve time for rebuttal, keep track of it because that counts for time, right? I would, Your Honor. Go ahead. I'm going to be brief because the issues are very brief and concise. They're very narrow. If it pleases the Court, the Texas licensing requirements as set forth in the Texas Insurance Code, which are fundamental public policies of the State of Texas. Are they to the State of Arizona? They are, Your Honor. Are they fundamental public policies for the State of Arizona? Yes, they would be, Your Honor. Okay. Those licensing requirements control and apply to the contracts at issue in this case, the Tamarack Access contracts. And by reason of the fact that Tamarack, Ross, Richard Ross, did not have the requisite licenses, either an insurance agent license or an insurance intermediary, reinsurance intermediary license, those contracts are unenforceable and they are not, Tamarack is not entitled to recover under them. The parties cannot, by writing into the contract a severability clause or anything else, contract away the licensing requirements of the State. Is your client an insurer or licensed insurance agent? No, it is not, Your Honor. Then why does the Texas statute, Article 21.07, prohibit payment? It prohibits the activity, Your Honor. Oh, it says no insurer or licensed insurance agent blah, blah, blah, blah, blah shall make payment. But your client's not covered by that, so that statute doesn't prohibit your client from making payment. Your Honor, our position is that it also requires the, it prohibits the recovery and collection of a payment, not simply the payment, but that. Any such commission or other valuable consideration, but he's not trying to collect a payment from an insurer or a licensed insurance agent. We're not a licensed insurance agent. So I repeat my question. Why does that statute apply to this situation? If the licensing statute does not entirely control, and we believe that it does for the public policy reasons that it does. What's the public policy behind giving your client a free ride? Well, Your Honor, we don't believe our client got a free ride. Our client paid a lot of money to the plaintiff over a period of time and had some significant problems. It's not part of the record, but. It's not part of the appeal, because you have to challenge the findings of fact that said the defendant performed. Correct? Rather, I guess it's the fact the appellee performed. In this case, it's the plaintiff. That's correct, Your Honor. On the licensing issue, we believe the reinsurance intermediary licensing statute controls, because the activities that Mr. Ross and Tamarack engaged in were primarily to locate, find, examine, and provide to Access, a reinsurance company, a reinsurance underwriter. That was the fundamental purpose of what Access needed. But why should your client get the services it contracted for without paying for them? Your Honor, our client did pay. Our client did pay for services, but to the extent that the activities that the plaintiff engaged in required a license, which was not obtained, and the statutes of the State of Texas clearly provide, rightly or wrongly, whether someone did perform work or not, the statutes control. And they say you're not entitled to recovery if you don't have the requisite license. As the Texas, I'm sorry. Isn't it agreed that most of the work, if not all the work that Tamarack did, it did from Arizona? I don't believe that was the case, Your Honor. Mr. Ross testified that he came to El Paso, Texas at least 25 times during the course of that. He did some work from Arizona, he says. But to perform the goal and to provide the services that he was claiming he was going to provide for our client, that meant working diligently to obtain for a Texas company and a Texas market an insurance product, which was to be provided to the City of El Paso and other public employees, bodies, and to secure insurance, reinsurance, which would insure and reinsure that product. That was the fundamental goal. That was the object purpose of these contracts. And to do that, A, he had to have a reinsurance intermediary license, which he did not have, and, B, that work, the nexus of that work, the focus of that work was in the State of Texas. So you think that Texas has a materially greater interest in the determination of this issue? Absolutely, Your Honor. It's a fundamental strict licensing requirement. Even though it's not in the record, when Your Honor asks the question, Arizona has licensing requirements for insurance agents, general agents, producers, et cetera. Let me return to something you mentioned very early in your argument, and that's the severability clause. Now, Judge Carroll found, right, in so many words that the severability clause is valid, and any unenforceable term of the agreement is severable. Why doesn't that get rid of the whole case? Well, Your Honor, I know that's what Judge Carroll found. We respectfully disagree with Judge Carroll's position. What's wrong with that? Because, again, under the fundamental public policy reasons for the strict licensing requirements, severability does not remove or sanctify the activities which were designed primarily to fulfill the insurance aspects of that contract. And that's where we believe that Judge Carroll was wrong. You cannot, by severing and writing a severability clause into a contract saying, we agree that this activity may not be illegal. We agree that selling drugs is not illegal. That does not make it illegal. The parties cannot contract away a strict statutory requirement and or prohibition, Your Honor. In terms of severability, and going back to the Greenblatt case, I think in that case the court found that none of the activities that Solomon provided were insurance-related activities. Fundamental difference between that case and this case is that all of the activities, the fundamental objective purpose of Tamarack consummating these contracts and performing and obtaining what he promised our client access, that he would obtain, was an insurance product. To obtain an insurance product, to procure it, to examine it, to analyze it, to do all the things that Ross said he did required the licensing in the State of Texas, Your Honor. All right. We've got about three minutes left, Your Honor. Your Honor, I'll reserve that. Unless Your Honor has any further questions, I'll reserve that. Thank you. Thank you. May it please the Court, my name is Jack Klaus and I represent the plaintiffs. First of all, there was never an argument in the district court or the opening brief why Arizona law would not apply. This is something that's really been raised in the reply brief. You have a contract that was executed in Arizona. It was primarily performed in Arizona. And to answer your question, it was not 20 to 25 trips to Texas. It was approximately 20 to 25 days of the year that he worked that he had to be in, that he went to Texas. And that was a key element in the Landy case, which the defendant cites. Plus, there's a choice of law provision drafted by the defendants in this contract. It's hard to find any merit or support for the suggestion that Texas has a materially greater interest in Arizona, especially when the one case that the defendant relied on, the Swanson case, was vacated and remanded by the Arizona Supreme Court subsequent to the filing of these briefs to reach an opposite result. I think it should be clear on what it means. If you conclude that Arizona applies, would that mean Arizona insurance law also applies with regard to whether or not your client was physiological? Yes, it does. So I think we have to take as a given that with regard to the licensure requirement, you have to look to Texas. Now, it may say that Texas doesn't require because he's not acting in Texas, but at least with regard to activities where Texas does have sufficient relationship to govern, it's the Texas insurance law that counts. That's what Swanson's, the Supreme Court opinion would suggest you to follow. First of all, there was never any suggestion ever, not even in the reply brief, that there was no compliance with Arizona law, which would be interpreted the way you say. Secondly, as Your Honor pointed out, the statute itself, and I was going to read it to you, but you pointed out the fact that it says insure. Now, I'm also going to recite to you the expert that they had, the only person that suggested that there was no compliance with Texas law, Mr. Schrader. His testimony is in volume 2 of December 6th, 2001. At page 184, he opines that a reinsurance intermediary negotiates contracts of reinsurance on behalf of an insurer. Again, at page 206, he says a license is required of brokers that represent insurers trying to get reinsurance. You would think that the first thing they would have to come in and tell you is we are a licensed insurer. They're not. They don't say that. You'll also note, I think, from the statement of the case and the appendix that they gave you, that Judge Carroll denied their motion for summary judgment on this issue before we were bright enough to tell them that there was a choice of law clause. So the issue is decided, first of all, strictly on Texas law. And we've told you that even were Texas law to apply, this is not a license requirement case. And has the Texas insurance department ever chimed in or anybody asked the Texas insurance department to speak to this? No. Of course not, because there are no insurance companies involved. And if you look at the testimony of Judge Carroll, basically these statutes are to protect consumers. They're not to protect Mr. Sestak's client from having to pay consulting fees, first of all. Secondly, he said what would happen in this case is if an insurer pays an unlicensed agent where it shouldn't, it may have to pay a fine. It's not a dramatic end-of-the-world type occurrence. I also want you to note one other thing. There was no testimony at all that plaintiffs ever performed any acts requiring a license. What the attack was was on the consulting agreements. Mr. Schrader had opined that he felt there were certain things that the consultants had agreed to do that might require licensing. He never said they did them. And, of course, when he was cross-examined, he indicated that he had not taken into account either the severability clause or the fact that there was a choice of law provision for Arizona. In summary, Arizona law applies. There's never been an argument that this contract would violate Arizona law. And even were Texas law to apply, the consulting agreements were enforceable. If you have questions, I'd be glad to answer them. Otherwise, I'll head back to Arizona. Thank you. Thank you, Your Honor. I would disagree with Mr. Klausener on one point. We cited the testimony of Mr. Ross in our briefs. He is the one that testified about what activities he did and did not perform. And it's his testimony that Mr. Klausener is the one that testified about those activities that governs the issue of the applicability of the Texas insurance statutes to his activities and to this case, Your Honor. In the big picture, except everything you say with regard to a violation of the Texas insurance code, I still can't connect up what is, in effect, the relief you seek, that is, not having to pay under the contract. If I drive with an expired license, it is not the law that everything I do on the roads is unlawful. So if I get involved in an accident, I'm automatically liable. Why is it the case here that your client, who entered into a contract, we're not talking about some ignorant consumer here, presumably your client knew what it was doing, why shouldn't it have to pay the contracted for amount because of what may be a license problem that the Texas insurance department could presumably take its own action for if it wanted to? That, again, Your Honor, gets down to not a matter of, you know, the equities. It's a matter of a strict application of the statutes to acts which the law in this case of that particular state, Texas, requires the license and says if you don't have that license to engage in these activities, you cannot be paid, the contract is unenforceable. It's a strict application of that, Your Honor, whether it's fair or unfair. In the context here, it's really not the issue. And to the extent that for a period of time, the plaintiff was paid, we're not seeking reimbursement of that payment as we stand before this court. We did not in this brief make that an issue. But it may be unfortunate, it may sound like our client is trying to duck out of something, but that's not the case. The law is the law and it has to be applied. Yes, Your Honor. Doesn't Judge Clifton's question raise the issue of whether or not this license requirement in Texas is such a fundamental policy that requires obeyance even to the extent of, in effect, refusing to enforce what would otherwise be a valid agreement? And how is the world of Texas going to be a better place if this Court says that parties don't have to honor their contracts? Well, I think if this Court says that parties don't have to honor their contracts because they violate, even though they violate specific statutes that are designed and enacted to provide for the public good and are fundamental public policies of a state, I think Texas would be injured. I think all the states would be injured. And clearly, Your Honor, I think the licensing requirements, whether they be insurance for attorneys, for doctors, for appraisers, for schoolteachers, for whoever, are fundamental public policies of the state or the federal government or the municipality that enacts those. That's why they are enacted. And if the ramifications are that you are to have a license, but if you don't, you don't get paid, those are the ramifications. And whether it's unfair to one party or another, it is the public policy of the jurisdiction enacting that law that has to be upheld. And that's what we ask for in this case, Your Honor. All right. Thank you. I think we understand your position. We thank both counsel for your argument. This case is submitted for decision. Next case on the argument calendar is one of our IDEA cases. Christopher S. versus the Stanislaus County Office of Education.
judges: Tashima, Clifton, Leighton